UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )   Case No. 4:07CV343 CDP |
| | ) |
| ROBERT TRIVETTE, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

Defendant Robert Trivette seeks dismissal of this action under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  Plaintiffs Monsanto Company and Monsanto Technology LLC (collectively "Monsanto") plead that this Court has personal jurisdiction over Trivette based on a forum selection clause in the 1999 licensing agreement between the parties.  Trivette admits that he breached that agreement in 2000 and he argues that the Missouri five-year statute of limitations bars the claims.  Trivette asserts that without the contract claim and the forum selection clause, there is no basis for personal jurisdiction.

Monsanto alleges that Trivette breached the 1999 agreement in the 2006

crop year, not in 2000, and it asserts that any earlier breach did not terminate its right to enforce a 2006 breach of the agreement. The terms of the 1999 agreement are of the type that allow for repeated or continuous violations of the agreement so Trivette could have separately breached the agreement in both 2000 and 2006. These distinct breaches are actionable under Missouri's continuous and repeated wrong rule. I find that the breach of contract claim is not barred by the five-year statute of limitations and that the forum selection clause is valid and reasonable. Therefore, I will deny Trivette's motion. Because the parties' briefs detailed the facts and law at issue, an evidentiary hearing or discovery is not necessary.

## **Background**

Both plaintiffs Monsanto Company and Monsanto Technology LLC are Delaware corporations with their principal places of business in Missouri. Monsanto Company is in the business of developing, manufacturing, licensing, and selling agricultural biotechnology, agricultural chemicals, and other agricultural products. Defendant Robert Trivette lives and farms in North Carolina. He has never lived or farmed in Missouri, nor has he sold any products into or purchased any farming products from the state. He farms approximately 200 acres of soybeans and sells his crops locally each year.

Monsanto developed biotechnology that involves genetic modification of

soybeans to make them resistant to Roundup herbicides. Roundup is a non-selective herbicide manufactured by Monsanto; if applied to non-modified soybean varieties it kills the soybeans along with the weeds. The genetically-modified soybean seeds are marketed by Monsanto as Roundup Ready soybeans. Monsanto's Roundup Ready seed biotechnology is protected under patents issued by the United States Patent Office.

Monsanto licenses the use of Roundup Ready seed technology to farmers at the retail marketing level. In 1999 Trivette executed a licensing agreement with Monsanto. Under the terms of that agreement, Trivette, as a purchaser of the Roundup Ready seed, was only authorized to use the seed for planting a commercial crop in a single growing season, and he was prohibited from saving any of the crop produced from the purchased seed for planting or providing it to others for planting.

Monsanto alleges in its complaint that fields farmed by Trivette in 2006 were planted with "saved" bin-run Roundup Ready soybeans, in other words, soybean seed produced from the Roundup Ready soybean seed that had been planted in 2005 or an earlier year. As a result of this alleged violation of the licensing agreement, Monsanto brings five claims in its complaint, including claims of patent infringement, conversion, unjust enrichment, and breach of

contract.

## Discussion

A defendant may move to dismiss a claim for "lack of jurisdiction over the person" under Rule 12(b)(2), Fed. R. Civ. P., or for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6), Fed. R. Civ. P. The plaintiff bears the burden of showing that personal jurisdiction exists. Epps v. Stewart Information Services Corp., 327 F.3d 642, 647 (8th Cir. 2003). A prima facie showing of personal jurisdiction over the defendant defeats a motion to dismiss for lack of personal jurisdiction. Lakin v. Prudential Secs., Inc., 348 F.3d 704, 707 n. 3 (8th Cir. 2003). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim entitling it to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Young v. City of St. Charles, Mo., 244 F.3d 623, 627 (8th Cir. 2001). When considering a motion pursuant to Rule 12(b)(6), the court must assume the factual allegations of a complaint are true and must construe those allegations in favor of the plaintiff. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

The personal jurisdiction issue before the Court is not one of minimum contacts but one of validity and applicability of a forum selection clause. Trivette

does not deny executing a 1999 licensing agreement with Monsanto, which included the following forum selection clause:

> THIS AGREEMENT IS GOVERNED BY THE LAWS OF THE STATE OF MISSOURI AND THE UNITED STATES (OTHER THAN THE CHOICE OF LAW RULES). THE PARTIES CONSENT TO THE EXCLUSIVE JURISDICTION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, STATE OF MISSOURI, FOR ALL DISPUTES ARISING UNDER THIS AGREEMENT.

Trivette argues that the statute of limitations has run on any claim arising under the licensing agreement because he admits to breaching the agreement in 2000, which he asserts started the running of the statute of limitations. He thus argues that any claim under the agreement is time-barred and therefore the forum selection clause does not provide personal jurisdiction in Missouri.

According to Missouri statute, an action upon contract must be brought within five years of when the cause of action accrues. Mo. Rev. Stat. § 516.120. Accrual generally occurs upon defendant's failure to perform at the time and manner contracted. Hemar Ins. Corp. of America v. Ryerson, 108 S.W.3d 90, 94-95 (Mo. Ct. App. 2003). But the cause of action does not always accrue at the same time that the contract is breached:

> The cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the

> damage resulting therefrom is sustained and capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained.

Mo. Rev. Stat. § 516.100; see also Baum Assocs., Inc. v. Soc'y Brand Hat Co., 340 F. Supp. 1158, 1162 (E.D. Mo. 1972) (finding that the defendant's termination letter constituted the technical breach of contract but that plaintiff's damages were not ascertainable at that time).

Whether damages are capable of ascertainment is an objective test to be decided as a matter of law. Lane v. Non-Teacher Sch. Employee Ret. Sys. of Missouri, 174 S.W.3d 626, 634 (Mo. Ct. App. 2005) (citations omitted). 'Capable of ascertainment' may be construed to mean capable of being ascertained by a reasonable person using reasonable diligence. Cook v. DeSoto Fuels, Inc., 169 S.W.3d 94, 103 (Mo. Ct. App. 2005) (quoting Lockett v. Owens-Corning Fiberglas, 808 S.W.2d 902, 907 (Mo. Ct. App. 1991). Plaintiff need not know the precise amount of damage. In general, accrual occurs when the damage *can* be discovered, not when it actually *is* discovered. Lane, 174 S.W.3d at 634 (emphasis added). When plaintiff's right to sue arises or when a party could first maintain his cause of action successfully, the objective test is met and the statute of limitations begins to run. When the injury is complete, the period begins to run

immediately. Id. This is true even if the plaintiff has not actually discovered the injury. Cook, 169 S.W.3d at 103.

In this case, Monsanto alleges that "in at least 2006, fields farmed by Defendant Trivette were planted with 'saved' bin-run Roundup Ready soybeans, that is, soybean seed which was produced from the Roundup Ready soybean seed which was planted in 2005 or an earlier year." According to the affidavit submitted with Monsanto's surreply, Trivette not only purchased Roundup Ready soybean seeds from Monsanto in June of 1999 for the 1999 growing season, but also again in 2004 and 2005. Trivette admits by affidavit that after the 1999 growing season he saved his seeds and in 2000 he planted saved Roundup Ready seeds. However, according to Trivette, he "did not use saved seeds from the 1999 season in any year after 2000."

Despite Trivette's admission, once he owned the seeds, every growing season since 1999 provided Trivette with another opportunity to breach the licensing agreement by planting saved seeds. Although there is no evidence that Trivette signed additional licensing agreements in 2004 and 2005 when he purchased additional Roundup Ready seeds, the limited-use license granted in the 1999 agreement prohibits any later use of the patented technology. Thus, if Trivette saved seeds from the crop resulting from seeds he purchased in 2004 or

2005 and replanted them in 2006, that would be a separate and distinct breach of the 1999 contract. Additionally, Monsanto's patented technologies remain protected even if the agreement was terminated by Trivette's admitted 2000 breach. The agreement states that even after it is terminated "any obligations that arose before termination will continue in effect." Therefore, Trivette remains obligated under the agreement not to save and replant Roundup Ready seeds. If Trivette violated this obligation in 2006, by replanting saved seeds from any of his earlier seed purchases, it would constitute a breach of the 1999 agreement.

In 1980 the Supreme Court of Missouri adopted the "continuing or repeated wrong" rule, which differentiates between a wrong that occurs once and wrongs that continue or repeat. <u>Davis v. Laclede Gas Co.</u>, 603 S.W.2d 554 (Mo. 1980). The court distinguished between two possible breach situations. First, a completed part of a defendant's conduct could cause all the harm that could result and no continuance or repetition would increase the damages. Second, the potentiality of future harm could be unclear because a defendant could remove the harmful condition or cease his wrongful conduct. When the damages had the potential of continuing or repeating, the amount of future harm will vary with the extent of the later wrongful conduct:

If the wrong done is of such a character that it may be said that all of

> the damages, past and future, are capable of ascertainment in a single action so that the entire damage accrues in the first instance, the statute of limitation begins to run from that time. If, on the other hand, the wrong may be said to continue from day to day, and to create a fresh injury from day to day, and the wrong is capable of being terminated, a right of action exists for the damages suffered within the statutory period immediately preceding suit.

Davis, 603 S.W.2d at 556. See also Baum Assocs., 340 F. Supp. at 1162; Cook, 169 S.W.3d at 103; Vogel v. A.G. Edwards & Sons, Inc., 801 S.W.2d 746 (Mo. Ct. App. 1990).

I interpret Monsanto's complaint as pleading a breach of contract of the type that can continue or repeat over time. I disagree with Trivette's assertion that once he unilaterally decided to terminate the agreement in 2000 "by definition there could be no further, future breaches of that agreement." Trivette's decision to terminate the agreement resulted in the termination of *his* rights under the agreement. That decision did not terminate Monsanto's rights nor did it terminate Trivette's obligations concerning Monsanto's patented technologies under the agreement. According to the terms of the agreement, even after termination, all obligations under the agreement continued. Despite Trivette's admission of a breach in 2000, Monsanto can pursue this case and attempt to prove that Trivette not only breached the licensing agreement in 2000 but also again in 2006 by replanting saved seeds from some previous year. The saved seeds could have been

the result of his 1999, 2004, or 2005 crop, or they could have resulted from a crop planted with saved seeds in some growing season between 1999 and 2005. The facts and circumstances of this case demonstrate that the continuing or repeated wrong rule adopted by the Missouri Supreme Court is applicable here and the statute of limitations does not bar Monsanto's contract claim.

In addition, I find no evidence that Monsanto waived its right to enforce its rights under the licensing agreement. According to Missouri case law, waiver is defined as an intentional relinquishment of a known right and "if not shown by express declarations but implied by conduct, there must be a clear, unequivocal, and decisive act of party showing such purpose, and so consistent with intention to waive that no other reasonable explanation is possible." Bartleman v. Humphrey, 441 S.W.2d 335, 343 (Mo. 1969) (citing Lucas Hunt Village Co. v. Klein, 218 S.W.2d 595, 599 (Mo. 1949)). Trivette offers no evidence of a clear, unequivocal, and decisive act by Monsanto indicating an intent to waive its rights under the agreement. Trivette just argues that Monsanto's knowledge of the breach and failure to sue constitutes a waiver. This is insufficient under Missouri law to demonstrate an intentional relinquishment of a known right.

Given that the statute of limitations does not bar Monsanto's breach of contract claim and that there is no evidence of waiver of Monsanto's rights, the

forum selection clause in the licensing agreement is valid and enforceable as to "all disputes arising under [the] agreement."[1] It is undisputed that the breach of contract claim arises under the agreement. However, Trivette argues that the other claims brought in Monsanto's complaint (patent infringement, conversion, and unjust enrichment) do not arise under the agreement. But in Trivette's reply brief, he concedes that if a valid breach of contract claim exists, then this Court has jurisdiction, when he stated:

> Without a doubt, jurisdiction would lie in this Court as to those [patent and tort] claims if Monsanto could state a valid claim for breach of the [licensing agreement].

I conclude that Monsanto's other claims do arise under the licensing agreement. See Triarch Indus., Inc. v. Crabtree, 158 S.W.3d 772, 776 (Mo. 2005) (looks to ordinary meaning of the contract's terms). Signing the licensing agreement was a condition of the sale of Roundup Ready seeds. Without the purchase of the seeds, Trivette would never be able to save and replant the seeds thereby violating Monsanto's patent rights, converting Monsanto's property, and unjustly enriching himself at Monsanto's expense. I agree with Monsanto that

---

[1] Trivette does not directly dispute the validity and reasonableness of the forum selection clause, he just disputes its enforceability as to the facts of this case. To the extent this issue is in dispute, I concur with this Court's long history of finding the same forum selection clause valid and enforceable. See Monsanto Co. v. Swann, No. 4:00-CV-1481 CEJ, 2001 WL 34053250 (E.D. Mo. Sept. 25, 2001) (citations omitted).

-11-

there is single dispute at issue here, which it is pursuing through alternative legal theories. The same operative facts, grounded in the licensing agreement, are essential to all of Monsanto's claims. All five of the causes of action pled by Monsanto in its complaint arise under the licensing agreement. See also <u>Monsanto Co. v. McFarling</u>, 302 F.3d 1291 (Fed. Cir. 2002) (holding that same forum selection clause provides personal jurisdiction over defendant as to plaintiff's patent infringement and breach of contract claims).

In the alternative, Trivette argues that enforcement of the forum selection clause will produce substantial injustice because of his financial inability to defend the case in a foreign jurisdiction. Trivette notes the disparity in the parties' resources and asks that the Court disregard the forum selection clause as unjust and unreasonable and therefore contrary to public policy. As stated earlier, this same clause has been evaluated multiple times by this Court and found to be valid and enforceable. In <u>Monsanto Co. v. McFarling</u>, 302 F.3d 1291 (Fed. Cir. 2002), the defendant challenged the same forum selection clause at issue here on the grounds of fairness. The Federal Circuit upheld this Court's ruling that the clause was valid and enforceable, and that as a result, the Court had personal jurisdiction over the defendant. <u>Id.</u> at 1295-96. Similar to the defendant in that case, Trivette has failed to demonstrate that the choice of Missouri as the forum is unreasonable.

## Conclusion

Monsanto's claim for breach of contract is not time-barred and the forum selection clause is valid and enforceable, therefore, this Court has personal jurisdiction over Trivette and is the proper forum to judge Monsanto's complaint. One day after filing this case Monsanto asked for expedited discovery and entry of a protective order. Because no further action has been taken by Monsanto in an attempt to get such an order, the Court is unsure whether such relief is still being sought. Therefore, I will order the parties to meet and confer on this issue and Monsanto shall file a notice to the Court by Monday, May 14, 2007, stating whether it still seeks the requested relief. If such relief is still desired, Trivette shall file a response to Monsanto's motion by Friday, May 25, 2007. I will also set this case for a Rule 16 conference by separate order, so that even if expedited discovery is not required, the case will proceed as quickly as the parties believe appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for leave to file surreply [#17] is GRANTED, and the arguments contained therein have been considered by the Court.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss under

Federal Rules 12(b)(2) and 12(b)(6) [#13] is DENIED.

**IT IS FINALLY ORDERED** that the parties shall meet and confer on expedited discovery and the entry of a protective order as requested in Monsanto's motion filed on February 21, 2007. Monsanto shall file a notice to the Court by **Monday, May 14, 2007**, stating whether it still seeks the requested relief. If such relief is still desired, Trivette shall file a response to Monsanto's motion by **Friday, May 25, 2007**.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 8th day of May, 2007.